The first case on the calendar is Frey v. Taro Pharmaceutical. May it please the court. I would like to reserve two minutes for rebuttal. My name is Samuel Cole and I represent the appellants Frey et al. Plaintiffs in this case hail from 21 different states. Do any of them hail from New York? Your Honor, we had originally filed in New York State Court and the New York plaintiff was severed out. So the answer is no? No, Your Honor. Because you talk a lot about New York law. Is Taro located in New York? Yes, Your Honor. Taro is a New York corporation? Yes, Your Honor. Okay, fine. Thank you. Yes, Your Honor. So the claim that the medication guide, the failure to warn claim, they allege under the common law of their home states, that defendant failed to adequately warn when it failed to ensure that plaintiffs received consumer warnings called medication guides. If plaintiffs had received these warnings, they would not have taken amiodarone, the drug at issue in this case. We plead that the method defendant should have used to warn consumers is to follow federal regulations that are intended to ensure that consumers receive the guides. But we have always been clear that we are making state law claims. As an aside, we couldn't plead that defendant should have done more than the regulation provided or else our claims really would have been preempted. How is the claim that there was a failure to provide the medication guides distinct from a federal law violation? How is the state law claim distinct? Help me understand that. Yes, Your Honor. And this really goes to the heart of our state law claims. I'm sorry. I'm having a frog in my throat. So under state law, you have an obligation to provide a warning. It's form book law that a failure to adequately provide the warning is a failure to warn. For instance, if you have a warning, a perfectly worded warning for yard darts, but you don't put the warning on the product, that might be an inadequate failure. That might be a failure to warn under state law, although ordinarily it's going to be up to the finder of fact. Or, for instance, you might have a warning that is not reasonably calculated to reach the consumer in some other way. Say that it's in too small of a font or they just put it on the website. But here the federal law decides the obligation with regard to the delivery of the warnings, doesn't it? Yes, Your Honor. And that's to the local distributor, correct? Yes, Your Honor. And so you'd impose an additional obligation on the manufacturer to ensure that the pharmacist hands the warning, the label, to the consumer that delivers the prescription to the pharmacist? No, Your Honor. We are only alleging that they should have followed the federal regulations, which were for the purpose of ensuring that the warnings reach the consumers. The federal regulations provide an adequate method for ensuring that the warnings reach the consumers. But under state law, our theory is that if they would have followed these federal regulations, these warnings would have reached the consumers. But they did not provide sufficient warnings to the distributor or the means of reproducing the warnings to the distributor. I'm having difficulty seeing why then this is not just an action to enforce the FDCA. I mean, if you're saying if they failed to follow the federal regulations, they should have, that's our state law claim. That doesn't sound at all different from the federal claim. Yes, Your Honor. And just to clarify, so if this had been a medical device, there is an express preemption provision in the medical device amendments. And they also have the implied preemption issue under Buckman. In fact, Buckman was a medical device case. And so under express preemption, they have to follow, they have to say that they violated the federal warning, the federal regulations exactly. And we're doing something similar here. We're saying that they should have followed the federal regulations to avoid preemption under the mincing case. But our claims are based on state law. If they had followed the federal regulations, that would have been sufficient under state law to warn the consumers. And in what specifics do you allege that Taro did not take adequate action? First of all, is Taro the sole defendant here? Yes, Your Honor. OK, so despite the caption and so on, we're focusing on Taro. And Taro, you say, is actually a New York corporation. Yes, Your Honor. And you're saying that Taro, it had a distributor, but it failed to give the distributor the correct or any insert? Yes, Your Honor. The federal regulations have a procedure that if Taro had followed, the consumers would have gotten their warning. Our claim is a failure to adequately provide a warning. And so there's going to be a fact issue over whether their distribution method was adequate. Do you have any specifics about its relationship with the distributor? What was the name of the distributor? I do not recall that off of the top of my head. But we plead that they did not provide adequate medication guides to the distributor or the means of producing them. The problem is, do you take issue with that? I guess you take issue with the district court ruling. The district court said specifically that the appellants do not identify a parallel state law requiring Taro to make available to distributors. I'm going to mispronounce the drug. Forgive me. Amidiron? Amidiron. Yeah, Amidiron, whatever. The drug medication guide, do you take exception to that? Can you tell me where in the complaint you identify a specific state law? Yes, Your Honor. Our claims are based on state common law. Okay, so let's take West Virginia. Tell me the West Virginia case that stands for that requirement. Yes, Your Honor. It's the Carl decision, and I can get you the... Did you plead it in your complaint, and or did you have that in front of the district court? We did have that in front of the district court, Your Honor. At the time, it was in the briefings, I know, and I do not recall if we cite the specific case in our complaint, but it was in the briefing. And, Your Honor, this kind of goes to the heart of it, is in order to address whether our claims are preempted, the district court needed first to determine the contours of state law. We did say in our response to the motion to dismiss that under the Carl decision in West Virginia, defendants had an obligation to adequately provide a warning to the consumer, because at the time when I believe it was... Let me ask you this. Let me ask you this. Presume that you're right about that. What about the warning itself, the label itself, and the medication guide? Don't you ever... Do you allege that the medication guide should have differed from that which Wyeth provided with regard to the same drug? Your Honor, may I please answer this question? Yes, please go ahead. I would love, with the presider's indulgence, to ask a question thereafter. We have plenty of time. Thank you. Yes, Your Honor. So, we believe that the medication guide was adequately worded. So, to go back to my yard darts example, you could write a perfectly worded warning, but if you did not have that warning on the product and you just had it in a desk in an office somewhere, that would still be a failure to warn. You can see, though, that the medication guide pursuant to the rule of sameness has to be the same as that which Wyeth provided, right? Absolutely, Your Honor. And that is why we allege that they failed to provide an adequate... They failed to follow the FDA regulations. All right. I'm sorry. Go ahead, Judge Curry. No, no. I wanted to get at some more specifics because a lot in your very lengthy complaint struck me as detailed about the plaintiffs and not so detailed about what Taro did or didn't do. And in particular, with regard to the claim that Taro did not correct misinformation in the physician reference materials, what misinformation did they fail to correct? Yes, Your Honor. So on the Hippocrates website, it strongly implies that amiodarone has been approved for atrial fibrillation, which is the condition that all of the plaintiffs had, and it has not been approved for atrial fibrillation. And as a generic manufacturer, you believe that they had an obligation, an independent obligation and authority to change what was on Hippocrates? Your Honor, it's our understanding based on... And some of this we do need this discovery on, but it's our understanding that Hippocrates gets this information. They had pictures of Taro's drug, I believe, on the Hippocrates website. And so it was our understanding that this information ultimately came from Taro. But why isn't that information, the substance of it, also subject to the same kind of preemption we've been talking about where the brand manufacturer has the primary obligation, having gotten the approval from the FDA, to control what is publicly available about the drug? Yes, Your Honor. And in fact, this is the whole issue with the misrepresentation claims. The FDA does not say that this is approved for atrial fibrillation. So the whole problem with that information is that it is going above and beyond what they're required to do from the FDA, and it's misleading. Can I just ask a follow-up question about the medication guides again? Yes, Your Honor. I realize that mincing and Buckman create a sort of catch-22 for plaintiffs, but maybe they just do that. I'm just trying to understand how you're navigating between that. So you conceded to Judge Wesley that the medication guide needs to comport with mincing. It needs to say what the FDA says it should say, nothing more, nothing less. Yes. And Buckman, do you also agree that Buckman basically says private actions to enforce the FDCA are preempted? Yes, Your Honor, but I do not believe that Buckman says that if you're alleging a state law claim that parallels precisely the FDA, even if you talk about the FDA all the time, as long as it is rooted in state law, I do not believe that Buckman preempts that. I guess I'm wondering where that word precisely comes in, parallels precisely. You mean identical in all respects? I mean, I thought the import of your claim, the FDA does say these things should be distributed to, the guide should be given to distributors, and presumably there would be a federal law as to whether they were adequately distributed if the FDA decided to enforce a failure to distribute. You're saying that state law has its own method for how they should be distributed. That goes further than the federal law? Well, first of all, this is a prescription drug case, and so express preemption does not apply. I understand that. But the common law state law claim is just reasonableness. But these are, at their heart, their duty to warn cases. I mean, in New York, it's a duty to warn. You just talked about a guard on a machine. Black and Decker in New York law, Liriano versus Hobart, the duty to warn is fairly well laid out. But it's a duty to warn. So, you know, it's one thing to say that they should have gotten the label to the consumer. But then the question is, what should have been on the label? And so I have a hard, I mean, at its core, it's a duty to warn claim. It's not a duty to distribute claim. It's a duty. It's a generalized common law duty to warn claim that has within it the adequacy of the, I suppose, the adequacy of where it's in the packaging, how easy it's to see and everything. But ultimately, it's what is the warning? And that's my problem I have with you in this, because I specifically asked you if the warning could be different from that which is issued by Wyeth. And you said no, because you're stuck with this rule of sameness. So tell me, how is it then that it matters as to how it's distributed? If it's a warning that ultimately ends up being inadequate because of the rule of sameness as opposed to, and that's precluded, isn't it? Your Honor, we believe that the language of the warning would have been adequate if there was some sort of, if there was a sufficient, a reasonable mechanism for ensuring that the consumers actually saw it. So you're saying that Wyeth's medical guide, the information Wyeth's medical guide, which doesn't talk about an off-label use, right? That's one of your complaints. You say Wyeth poisoned the well. You can't have it both ways, counsel. You can't have it both ways. You can't say that Wyeth did something wrong and then say, okay, Wyeth's warning is good enough. I mean, you can't say Wyeth, in fact, you even say that Wyeth did so many things wrong that Terrell should be correcting them, don't you? That's another one of your claims. Yes, Your Honor. I mean, I realize, look, Messing and Buckman put this in a tough spot, and the rule of sameness has cast a long shadow here. But at its core, this thing about the distribution of medical guides is a duty to warn, is it not? Yes, Your Honor. All right. Fair enough. May I please answer very briefly? I understand I'm way over. Judge Carney, did you have another question? I did have a brief question, if I may. I wanted to understand with a little greater precision your claim that Terrell failed to report adverse events. As I understand, that's based on a statistical analysis saying there should have been more adverse events than were ultimately reported. Yes, Your Honor. But not on any specific incident in which you can allege knowledge that, in fact, Terrell had and failed to report. Is that correct? Yes, Your Honor. Although the district court did not give us an opportunity to re-plead, and since that claim was not preempted and the district court just tacitly denied it, I would say we think that it was adequate to plead the statistical claim. Are you saying you actually have incidents that you would include if you were allowed opportunity to re-plead? Not that I'm aware of as I sit here. Okay. Thank you. So, Mr. Cole, you reserved some rebuttal time. Do you mind finishing your answer to Judge Wesley during the rebuttal? Yes, Your Honor. Thank you, Mr. Cole. Thank you. We'll hear from Mr. Lederman.  May it please the court. One of the things that I think has come out during Appellant's argument is the central concern that Appellee has in the arguments on appeal and in the original complaint and is the reason why we are seeking to defend the district court decision as well as recommend the views of the Third Circuit in Bean and the Sixth Circuit in McDaniel. This case is about a regulatory provision that is solely a creature of the FDA. And as Judge Wesley was noting in his questioning, this is a duty to warn case, but it is wrong to use an analogy about widgets or manufacturing or any of the cases that are the lead cases in New York that Judge Wesley cited. This is a pharmaceutical case. And the duty to warn is not a duty warned to a consumer. It's a duty to warn to the doctor. And as a failure to warn case as well, it is whether or not the adequacy of the warning was provided to the doctor. But what we have in this lawsuit is an effort to transform state law into a duty for a pharmaceutical manufacturer to warn the patient, the consumer. And that is based on solely an FDA regulation. And we might add that the FDA regulation that's being cited isn't even being cited correctly because the FDA regulation does not say that the manufacturers, I think, was raised in one of the other questions. The manufacturer is not a guarantor of what the dispenser does. There are many people in the distribution chain with responsibility for the distribution of the medication guide. But the medication guide is to be dispensed by the retailer at the point of sale. And that is the obligation that gives it to the consumer. But nevertheless, in state law, there is no such thing as a medication guide nor a requirement that a pharmaceutical company must give something to the consumer. They give it to the doctor. And then we get into this question of sameness as a generic because there's a limitation of what a generic can do and can prepare in documentation. The generic manufacturers, such as Taro, must follow the exact warning that is created with FDA approval by the brand manufacturer. Can I just ask the learned intermediary doctrine, which I understand it's very important here, is it applicable in all of these states? Yes, Your Honor. And we think that there's case law that we have cited that shows that it is recognized in all these states. In fact, our position is an interesting eerie dilemma because what we believe is being asked in this case or would have been asked in this case, as in the other cases that have been filed around the United States, is asking the federal courts to create exceptions to the learned intermediary doctrine in each of these states. That's unwarranted. There's been citation to West Virginia. And in fact, the court in West Virginia, Your Honor, was looking at a direct-to-consumer situation. And there was direct-to-consumer advertising by the brand in that case. And as was cited in our opposition brief, we noted that in those decisions, the courts, in fact, said it is a unique exception. And but for that unique exception of direct-to-consumer advertising for the particular drug, there is no reason to deviate from the general standard rule of learned intermediary, which then rematerializes and focuses on the adequacy of the warning to the physician. And it's important that the plaintiffs continue to concede that there is no objection to the substance of the warning. And, of course, we don't believe there would be because the warning followed the exact warning that was approved by the FDA. The medication guides are medication guides that are created with approval by the FDA with the brand. And since it's part of the overall documentation, the generic must have filed as part of its ANDA application, Abbreviated New Drug Application. That document then becomes part of the literature. Equally. Yes, Your Honor. That's okay, Mr. Lindemann. It's the function of the way we're working here. But the assertion is that Wyeth created an off-label market for this drug. Now, the off-label use isn't set forth in the medicine guide, right? The off-label use is not. There can be no reference to anything other than the approved indication in the document. Right. And so the tarot-produced generic drug analog to the Wyeth drug has, in essence, the same information that the Wyeth medical guide does, right? That's correct, Your Honor. And that's the rule of sameness. That's the thing that presents such a formidable problem for the plaintiff. But what happens when a drug manufacturer assists in or allows its drug to be used in an off-label use? Does the FDA step in? And, I mean, from your experience, does the FDA step in and require an alteration of the medical guide or to warn against off-label uses or the difficulties of off-label uses? How does this off-label use market develop? Well, Your Honor, the way that traditionally off-label use develops is through a standard of care that is formulated and evolving in the medical community. The FDA does not regulate the medical community, and it does not regulate a prescription. Well, but it does regulate what the consumer gets to be told about the drug, and apparently, eventually, an off-label use develops. And let me say this. If I manufacture a widget, and a widget's supposed to do a certain job, but ultimately I, as the manufacturer, know that the widget's being used to do something else and that, in certain instances, that can be dangerous. In New York, sooner or later, I'm going to have a responsibility to warn about that. Now, are you telling me that there's no duty to warn when a manufacturer becomes aware of a well-known off-label use? There is no obligation, Your Honor, and, in fact, there is a prescription against a generic manufacturer issuing any type of literature or statement outside of what the brand has. Well, I get that. I get that from the rule of sameness. But what about from the FDA's standpoint with the original manufacturer? Is there a mechanism with regard to the FDA where it can alter, given a general awareness of an off-label use and or a danger to answer it with that off-label use? Your Honor, I'll have to concede that I'm not aware of the answer to that, and it would be… Well, let's presume that there isn't, that there's no federal regulation at all in there. Would a state law that required such a warning be preempted? Yes, Your Honor. I don't believe that. Why? Federal law doesn't preclude it. I'm presuming that federal law doesn't preclude it. Would a state warning not be okay? Well, with respect to whether or not the brand… Well, we do have case law that's still evolving over the extent of preemption on whether or not the FDA's requirements of the warning label is sufficient or whether there can be changes being effected to modify those labels, and it becomes the brand's obligation. And in those instances, if it's considered to be a dangerous aspect of it, that is something that possibly the brand, and those are some of the cases that are cited by the plaintiffs that are particular to brand obligations, are dealing with those brand obligations and working with the FDA and taking actions that are required. But again, it is not something that falls into the lap or the responsibility of the generic. Moreover, the issue is off-label is not per se wrong. Oh, no. I didn't mean to imply that off-label had some kind of nefarious aspect to it. And if I implied that, I didn't mean to. I certainly didn't mean to. But theory here is that some off-label uses were potentially dangerous. And, Your Honor, I believe that since the prescription of a drug like amiodarone, different than some of the other drugs, especially the ones that sometimes are choices that can be affected by the consumer, but these are prescription drugs, serious prescription drugs that are totally controlled as a decision of the medical provider, understanding the risks regarding that drug, which is provided in the labeling, and understanding what there are indications for, as well as being aware of what general research has created a standard of care in the community. Without a doubt, I mean, we believe that the evidence would have shown that atrial fibrillation is an indication that is widely accepted, in fact, by the American Cardiology Association and medical communities as part of the standard of care. It just has never been approved by the FDA for that. But it's defensible for a doctor who prescribes it based on his judgment for a particular use, including atrial fibrillation. Yes, could you address, pardon me for interrupting, but I wonder if you could address the generic manufacturer's obligation to report adverse events and what a failure to do so would would mean if, you know, if, for example, following up on your conversation with Judge Wesley, Tero had become aware of serious adverse events early occurring in connection with prescription of amiodarone for atrial fibrillation. I assume that it has an obligation to report that and then, you know, to participate in the generation of data that would lead to a warning about off-label use. Is that, am I incorrect in that understanding? Your Honor, there are requirements to report adverse events, but as was noted, there are instances where the reports go no further and what would eventually be done is between the brand and the FDA. And therefore, arguments, for instance, in mensing that the generic understanding that there was a problem with the drug should have either stopped marketing it or should have told the brand or should have told the FDA and somehow that creates liability if they didn't is purely something that the Supreme Court at the time said is not an alternative theory against the generic because it's speculative what the outcome would be. The generic does not have that obligation and you can't lengthen causation in making that type of a claim. So maybe it's a regulatory obligation, but the breach of that obligation doesn't provide the basis for a duty to warn claim. Is that what you're saying? That is correct, Your Honor, because again, where is the state law corresponding duty? There is none. There is no, and that goes back to the fundamental question. There is no duty to warn to the consumer. It is a duty to warn to the doctor, to the medical community. There's no exception to the verbiage of the warning, no argument that the doctors did not get the label or did not have access to the label, which is all part of the general medical literature. The district court did not do an analysis of each state law. Do we have to do that analysis that you're alluding to that the learned intermediary defense would apply in all or the case law would apply in all these circumstances? Or is it easier to just look at Mincing and Buckman and just say there's a federal obligation? There's a lot of claims in the briefing, but to the extent that we're talking about the medication guide and the failure to distribute it adequately, can we look to Buckman as the district court did to find that claim preempted? We think you can, Your Honor, as the Sixth Circuit did in McDaniel. We feel that there are two aspects here that's clearly on the record. One is that it is a creature of the FDA and there is no general state law cause of action but for the FDA. And secondly, we believe that the court could look to the fact that the medication guide regulation by the FDA is not being properly described by the plaintiffs in that it does not per se create even a direct obligation to provide the guide to any consumer. What about Wyeth? Wyeth says that the federal law makes a floor and that it doesn't preclude the state from, based on its own pre-existing laws, assessing a higher duty, including, for example, in ways that don't conflict with the federal regulatory scheme. And for example, to focus on distribution and the distribution network and making the generics obligation to make sure that warnings got to its distributor and were being given out, I don't see how that really conflicts with the federal scheme. It seems to me that maybe comports with Wyeth. Why am I wrong? With due respect, Your Honor, one question then that you've raised requires a refocus on the word and the exact precise literal wording of the regulation, which does not say that the manufacturers have some obligation to their entire distribution network to make sure that they've acknowledged they've received medication guides, that they understand the significance of medication guides, and in fact guarantee that medication guides are distributed at any point in the process. That's not what the regulation says and will rely on a literal reading of the medication guide itself. But why would it be a conflict to look at state law and say, well, in New York, you know, New York's very protective of its consumers and even apart from the fact that there's no New York resident plaintiff in this case, if there were, you look at New York state law and say, in New York, we're actually going to require and make sure that the generics distribute and have their distributors make sure that the warning pamphlet, which is identical to what the brand manufactured, that it reaches consumers. If it does that, then the state is obviously creating a regulatory scheme. Why is that a regulatory scheme? I'm sorry. Why is that a regulatory scheme? Why isn't that just New York looking at its overall common law, long history on duty to warn and saying, we're going to ask a little bit more than the federal regulatory scheme does of generic manufacturers in fulfilling that duty to warn. And we're looking at Wyeth for giving us room to do that. Well, we believe that what Wyeth has done is discuss in a specific context of brands, what their obligations are and how they can make changes and that they can make changes in the substance of warnings. And that's what Wyeth was focusing on. And that in and of itself is a distinction from the generics. Now, as to whether or not a state can require that there must be some warning that's provided to a consumer. If a state chooses to create that exception, then I would agree that a state can require that, I guess, a approved FDA warning must be provided to consumers. But when one looks at the jurisprudence nationally and cases that have reviewed it over and over again, we don't see certainly in any state that the learned intermediary doctrine is not a bar to that type of common law duty. But you agree that that wouldn't conflict with any obligation established by the FDCA, right? As long as it would be following the verbiage and the requirements, but on the FDA requirement, Your Honor. The exact same verbiage. Because I'm concerned that, you know, you turn on the TV and we get a lot of direct-to-consumer advertising now. And it seems to me a state could say, listen, in the context of all this direct-to-consumer advertising, we're not going to rely on the guy speaking a mile a minute at the end to give warnings. We want to make sure that generic manufacturers as well as brand manufacturers fulfill their duty to warn by ensuring that their distributors provide the FDA-blessed warning. But Your Honor, the presumption there is that there is direct-to-consumer advertising that creates, in those cases that have been cited, a unique situation because the issue here is, and I think this is a concern that the FDA has, and that is the most appropriate individual that requires the needed information regarding the drug, a prescription drug, is the information that's provided to the doctor. And making sure that the doctors receive it is crucial to suddenly engage in this competition between, with every prescription drug out there, the need to ensure now that there's information flowing to the consumer when the FDA and what we believe to be a wise rule regarding learned intermediaries is to not invade or get involved with the relationship between the pharmaceutical its warning label and the doctors who must make the medical judgment and provide the information to the patient rather than the patient make its decision. And that's crucial. The medication guide was at best a supplement. And in fact, the FDA, in its guidance with respect to the regulation, which is quoted in the briefing, even noted that they did not intend by creating this process to interfere with basic state law obligations, which they understood involved the learned intermediary and the fact that it's a sacrosanct. It's a sanctified relationship between the pharmaceutical company, its requirements of giving medical information to the doctor to make its reasoned decision, and the doctor deciding how to deal with the patient. Why does the FDA require package inserts at all? I'll grant you that they require it. I know that, unfortunately, for one, I'll admit online if it's recorded that I very rarely read it. And in any event, the package inserts not going to create the liability if the package insert was clear but not clear enough to me as a consumer because I'm relying on the decision making and advice of my doctor. It's one thing to have an argument against a manufacturer. Why do you have an argument for failure to warn in a medical prescription case is because you're contending that the information wasn't properly conveyed to your doctor who couldn't convey that information to you. It's not that you didn't get the package insert and didn't understand it. It's only that you argue that the doctor did not get proper advice of the risks and could not make a reasoned risk evaluation of providing this medication because the benefits outweigh the risks. It's important for the doctors to understand that and make that decision. And that's the essence of the tension in all the pharmaceutical cases that you have generally seen in the Second Circuit as throughout the judicial process regarding the adequacy of the warnings of brand drugs. It's not whether or not the patient understood. It's whether or not the doctor would have altered the prescription habits and changed their advice to their patient. And so it goes through the doctor. It's not direct. And it's only in a very unique situation as you raised with your reference to direct advertising that it does create a certain complexity in those unique situations that were recognized in only those unique situations and only those we believe would have created that exception. Thank you. We'll hear rebuttal. Thank you, Your Honor. May it please the court. Okay. There's a lot to cover. First of all, Judge Carney, the FDA does specifically address why the medication guides are necessary in the regulations. It says that they are necessary for consumer safety. I would like to point out that Mr. Lederman virtually conceded that states would be allowed to require consumer warnings if it was a FDA warning. And that is exactly what the medication guide is. An unprovided warning under state law is no warning at all. The drug manufacturers must have a reasonable mechanism for getting the warning to the person who needs to receive it. But the label doesn't say anything about off-use. Your claim is all about off-use. And the FDA-approved medication guide doesn't say anything about off-use. That's why I asked you if the overall claim was one of duty to warn. And you said yes. Well, it's one thing to say that they violated the duty because they didn't provide it. But when the information that's going to be provided still falls short, the claim falls short. Your Honor, just to touch on that because that's very important. The medication guide does say specifically that this drug is only to be used for ventricular arrhythmias as a drug. Does the medication guide say that? Yes. Yes, Your Honor. It does. The medication guide does say that. And if the plaintiffs have received that, they would have known that they were not supposed to be taking this for non-life-threatening. In New York, do the doctors receive that? Do the doctors receive that? Do they know that? Well, Your Honor, that's going to be a fact question. And it does go back to the learned intermediary doctrine. It sure does. It does. And you cannot determine the scope of state law without doing a state-by-state analysis, which the district court did not do. Just really quick. And that's part of the problem with your lawsuit. Your lawsuit is a potpourri of people from all over the country. And your brief talks about New York law consistently, and yet you've got plaintiffs that are in other jurisdictions. And more likely, New York Choice of Law would pick their jurisdiction to decide the duties to warrant. It's very hard to pick out through this patchwork quilt anything other than that. So we're clear. You say that the medication guide that tracks Wyeth's medication guide, because of the rule of sameness, is adequate. Yes, Your Honor. Notwithstanding, your brief takes complaints about the adequacy of the warning repeatedly. And second of all, you're saying that the reason why it's adequate is because it says only for use with regard to one particular condition, correct? Yes, Your Honor. And just to clarify our complaint about what Wyeth did, they weren't just not giving adequate warning. Wyeth was advertising this drug for atrial fibrillation. I understand that. And in Massachusetts and California, you could do something about that. But New York doesn't have that kind of a statute. You haven't pled that with regard to any other jurisdiction. It's an interesting theory. I think it's very interesting, particularly in light of the relationship between generics and the patented medication. That would make for some very interesting high court decisions in various state high courts. But that's not this case right now, right? Yes, Your Honor. We're pleading it under the common law of the states where our failure to warn claim was pleaded under the common law of the states where they hail from. And I just want to correct something on Carl in West Virginia. The Carl decision did not limit its getting rid of the learned intermediary doctrine to direct to consumer labeling. We have that discussed in depth in our reply brief. And I would also like to mention that North Carolina law, the North Carolina state legislature, expressly says that the learned intermediary doctrine does not apply when, as here, the FDA requires a direct to consumer warning. And Mr. Lederman practically admitted that such a claim would not be preempted. And we have two. We have two plaintiffs from North Carolina. And so my point is that dismissing us on preemption without conducting a state by state analysis of our plaintiff's claims would be a massive extension of Buckman. And earlier, one of one of you had said that, well, maybe it's just impossible to get through Mensing and Buckman. But the Supreme Court has said that that's not true, that it is possible. Even in a even in a medical device case where you have this express preemption, it's possible. I believe the lower decision and the Stengel decision from the Ninth Circuit has a very good discussion on how this works. I cite that in the brief and I can give you the reference for it. Just really quick. Sorry, if I'm out of time, I understand. I did want to clarify something about McDaniel. Why don't you clarify that? And in summing up. Yes. Yes, Your Honor. OK, so McDaniel involved one plaintiff from a single state, Tennessee. And the McDaniel decision was implicitly based on Tennessee's learned intermediary doctrine. But in a very strong dissent from Chief Judge Cole, he explained that, well, actually, Tennessee law says that the learned intermediary doctrine is an affirmative defense and it's too early to get to that. You know, whether or not Tennessee is an affirmative defense for the learned intermediary doctrine. In some states it is such as Minnesota, where we just won on a motion to dismiss with one hundred and one plaintiffs alleging very similar claims. And so to sum up, applying the preemption to this case without conducting a state law, a state law analysis would be a massive expansion of the Supreme Court's decision in Buckman that's unwarranted by subsequent Supreme Court law. Thank you, Mr. Cole. We will take the matter under advisement. Thank you both. Well argued. Thank you. Thank you. Thank you.